MARGARET MILLER v. T. B. LASH and others Adm'rs.

*Master and Servant—Implied Contract—Statute of Limitations.*

1. Where services are performed by one person for another under an express or implied contract that the party receiving the service will provide compensation in his last will, and the latter dies without making such provision, an action will lie on a *quantum meruit* for the reasonable value of such services, freed from the operation of the statute of limitations, such action not being maintainable until after the death of the party liable.

2. Where services are given in the mere expectation of a legacy, not founded on contract, no action can be sustained for their value when such expectations are disappointed.

3. Where services are rendered for a series of years under no definite contract as to duration, rate, or mode of compensation, other than that

Implied by law, the promise which the law implies is to pay for such services as they are rendered, and the statute of limitations begins to run then, or at least, from the end of the year in which they were performed.

4. In an action against an administrator for personal services rendered his intestate by the plaintiff, it appeared in evidence that the services were of considerable value and highly estimated by the intestate, who declared his intention of compensating plaintiff in his will; and further, that plaintiff had frequently declared that she was not working as an hireling : *Held,* that the evidence authorized an inference involved in the verdict of the jury, that the services were not gratuitous, but did not justify the finding, in effect, of a mutual understanding as to the terms and conditions of plaintiff's service, so as to remove the bar of the statute of limitations.

(*Hauser* v. *Sain,* 74 N. C., 552, cited and commented on.)

CIVIL ACTION tried at Fall Term, 1880, of DAVIDSON Superior Court, before *McKoy, J.*

Verdict and judgment for plaintiff, appeal by defendants.

*Messrs. J. M. McCorkle, Starbuck* and *Bailey,* for plaintiff.
*Mr. J. M. Clement,* for defendants.

SMITH, C. J. In this action the plaintiff seeks to recover from the defendants, administrators of I. G. Lash, compensation for services rendered their intestate in the management and supervision of his domestic affairs and providing for his servants at Bethania, for a series of years succeeding 1849; and also for her special personal care and attention to the intestate himself, at his residence in Salem, for more than two years and a half preceding and until his death on April 17, 1878. The summons was sued out, after an ineffectual demand, on the 30th day of September following. There was much testimony offered to show the nature and value of the plaintiff's services, and the high estimate put upon them by the deceased, but there was no evidence of any special contract or understanding between the parties

as to their duration or compensation; and the defendants insisted, from their relations and dealings with each other, as disclosed by the witness, it was to be inferred that what was done by either was intended to be and was gratuitous; and they further contended that, if the plaintiff was in law entitled to remuneration, she could recover for such services only as were performed within three years next preceding the bringing of the action.   There was proof of declarations of the intestate of his high appreciation of the plaintiff's services, of their extent and usefulness, and of his intent to make a liberal provision for her in his will on account of them; and of her declarations to the effect that she was not acting as a hireling nor to be rewarded as such.   It was also shown that at the intestate's instance, a paper writing was produced on one occasion, bearing his signature, and then attested in his presence by a witness.   The instrument was not read by the witness nor explained by the deceased, and he knew nothing of its nature or contents.

Numerous exceptions were taken during the trial, which, with the testimony (much of it wholly irrelevant to the points presented) reiterated with equal particularity of detail in the case prepared on the appeal accompanying the record.   But it is necessary in our view of the case to notice and pass upon one only—that arising on the defense under the statute of limitations.

Among the instructions prepared by the plaintiff's counsel and presented to the court to be submitted to the jury, the third is in the following words: If the jury believe that the plaintiff was to serve the defendants' intestate for no certain or determinate time, and not from year to year, then no part of the claim for services is barred by the statute of limitations.   The court so charged, adding, "if the services were to be paid for by the week, month or year, then the statute will bar the action for all sums which were due to be paid three years prior to the bringing of the action; if

the services were to be continuous, and no amount fixed to be paid, and no time fixed for payment, the statute will not begin to run until the death of the intestate."

The defendants' counsel requested and were refused this modification : "In the absence of express contract a right of action accrued, as the services were rendered on the implied promise, and, as there was no credit, the law implied that every day's service was to be paid for what it was worth."

To these rulings exception is taken, and out of them arises the question we propose to examine, which is, whether services thus rendered for a series of years under no definite contract as to duration, rate, or mode of compensation, other than that implied by law, are without the operation of the statute of limitations until put an end to by the death or positive act of one of the parties?

The authorities cited in the argument for the plaintiff seem to establish the proposition that where personal services are performed by one person for another during life under a contract or mutual understanding, fairly to be inferred from their conduct and declarations and the attending circumstances, that compensation therefor is to be provided in the will of the party receiving the benefit of them, and the latter dies intestate or fails to make such provision, the subsisting contract is then broken, and not only will the action then lie for the recovery of their reasonable value freed from the operation of the statute, but it could not be maintained before. It is equally plain that if the services were given in the mere expectation of a legacy, without a contract express or implied, and in reliance upon the gratitude and generosity of the deceased, the action cannot be sustained. *Little* v. *Dawson*, 4 Dallas, 111 ; *Sevires* v. *Parsons*, 5 W. & S., 357 ; *Nimmo* v. *Walker*, 10 La. An. Rep., 581 ; *Riddle* v. *Backus*, 38 Iowa, 81.

In *Osborne* v. *Governors of Guy's Hospital*, 2 Strange, 728,

Chief Justice RAYMOND told the jury that if the plaintiff did not expect to be paid for transacting certain stock affairs of the deceased, but to be considered for it in his will, "they could not find for the plaintiff, though nothing was given him by the will, for they should consider how it was *understood by the parties at the time of doing the business,* and a man who expects to be made amends by a legacy cannot afterwards resort to his action."

In *Patterson* v. *Patterson,* 13 John., 379, VAN NESS, J., delivering the opinion of the supreme court of New York, in a case where the evidence showed the existence of such mutual understanding as to the mode of remuneration, and suit was instituted, during the life of the recipient, remarks: " The defendant is bound to make, and it is presumed will make, such a provision for the plaintiff in his will as will do him perfect justice, and which may be perfectly satisfactory to him, or which, in judgment of law, may amount to a satisfaction." He adds that, upon failure, the plaintiff can maintain his action upon a *quantum meruit,* but he cannot until such failure occurs. This statement of the law is substantially embodied in the second of the series of instructions asked and given, and would not be obnoxious to complaint if there were evidence of facts to which it would properly apply. But the testimony does not disclose any definite agreement or such facts as warrant the deduction of a common or mutual understanding, so as to make a contract broken by intestacy and give legal validity to the demand. Certainly frustrated expectations of a bounty, not the offspring of agreement, furnish no ground in support of an action. The evidence does, however, authorize the inference involved in the verdict and necessary to its support, that the services were not, nor intended to be, gratuitous, although there was none to enable the jury to solve the inquiry contained in the third instruction, upon the answer to which is made to depend the applicability of the statutory

bar to any part of the claim, extending as it does over a period of twenty-nine years. There was no evidence as to the terms of the implied contract, the sole proof being that valuable services were performed for the intestate during that long interval for which remuneration is due.

The question then is, is it to be assumed in the absence of evidence that compensation is not to become due at definite periods, and does become due at and not before the intestate's death, and thus the statute remain inactive during his life. Such was the charge, as we understand it, asked and substantially given with the explanatory supplement. At least such seems to have been its practical effect in guiding the jury to their verdict.

This view of the law is sustained in the remarks of the late Chief Justice (erroneously ascribed to Justice RODMAN in the reports,) delivering the opinion in *Hauser* v. *Sain*, 74 N. C., 552, where the facts were somewhat similar and the statute had been held in the court below to exclude all claim for labor performed more than three years before the commencement of the suit. He says, "His Honor erred in ruling that the plaintiff's right of action was barred by the statute of limitations, except as to the last three years. There was no reference to the number of years that the plaintiff was to render his services, nor was she to perform those services from year to year. So it was indefinite as to time, and her right of action did not accrue until her service terminated by the death of her grandfather."

This exposition of the law proceeding from a judge so thoroughly familiar with its principles, and entitled to great consideration, was given nevertheless upon a ruling adverse to the plaintiff and which was not before the court for review upon the defendant's appeal. It is but an expression of opinion upon an incidental question not presented in the appeal, and has not the force of an adjudication upon the point. It contravenes moreover the decision of the judge

who tried the cause in which the plaintiff's counsel acquiesced, in not asking for a review or correction. It is however in consonance with the ruling of the supreme court of Indiana, which sustains and approves the following charge to the jury: "If the plaintiff performed labor for the defendant's intestate under an agreement to be paid therefor, without specifying at what time such payment should be made, or how long such labor should be performed, then the statute of limitations would not commence running until such labor was ended." *Letiler* v. *Smiley*, 9 Ind. 116.

The contrary view has been taken in other cases of the legal consequences of the rendition of services wholly indefinite in time and rate of compensation.

In *Baxter* v. *Neuse*, 3 Term Rep. 10, TINDALL, C. J., thus declares the law: "The general rule of law is that, when there is nothing to contradict, if a person engages another upon a service, that is, in its nature, a lasting and enduring service, the engagement is for a year; but the law always looks at the nature of the contract as affected by usage in determining its import."

In *Davis* v. *Gordon*, 16 N. Y., 258, JOHNSON, J., reviewing the report of the referees upon exceptions, then proceeds as follows: "The referees have found that no time was fixed for the termination of the employment, nor for the payment therefor, and that the services in question were rendered under a general employment and retainer, and that they were continued without interruption from their commencement to their termination, a period of thirteen years. The referees have not found that the services were performed under a contract, that they should be paid for after Morris' death in case he did not provide by will for the compensation of the parties who rendered them; but *they are placed upon the mere ground of service, to be paid for at their value without any express agreement as to the time or measure of compensation or the time of employment.* The law will not, I think, in-

tend in respect to permanent and continuous employment, an agreement as to compensation, so unusual in its character, and so little conducive to the interests of either party to it, as that the payment of any compensation shall be postponed until the termination of the employment. *We think it should be deemed a hiring by the year.*

So Chief Justice THOMPSON, of the supreme court of Pennsylvania, in trying a cause before the jury, where the facts were not unlike those in the present case and quite as favorable to the plaintiff, charged them upon this point, in these words: "If there were nothing more in the case than simply that the plaintiff entered into the employ of the decedent, seven or more years ago, without any definite arrangement between them as to the amount of wages or as to time for compensation, then the law would imply that she was to be paid what her services were fairly worth ; that would be for you to determine, and *the law would imply that she was to be paid for these services from time to time as they were rendered.* In the event of the merely implied contract between the parties, *the plaintiff could not recover for the whole time of her services, because here the statute of limitations steps in and limits her recovery to what her services were worth during a period of six years prior to the time of suit brought.*"

There was no exception to this ruling in the appeal, the counsel acquiescing in it as in the case in our own reports.

In this conflict of opinion we are disposed to adopt as the more correct exposition of the law applicable to the facts, that for indefinite and continuous services payment may be required *toties quoties*, otherwise no action would lie until death, or perhaps until an end is put to the relations subsisting between the parties by the act of one of them, and hence, there being no default before, interest cannot accrue on detached parts of the demand. The allowance of interest is incompatible with the supposed unity of the implied promise, which is thus put beyond the reach of the statute.

We are of opinion then that the unexplained fact of labor performed and extending over a series of years raises no implication that payment is to be made at any fixed period, unless perhaps annually, as controlled by a prevalent custom appropriate to the kind of service and entering into the contract, when it so appears in evidence. The implied promise is to pay for services as they are rendered, and payment may be required whenever *any are rendered;* and thus the statute is silently and steadily excluding so much as are beyond the prescribed limitation.

There was error then in allowing the jury to find without evidence the terms and conditions of the implied contract, and thus place the claim wholly outside the statutory bar, and there must be a new trial, and it is so ordered.

Let this be certified.

Error.                               *Venire de novo.*